THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MANUEL TORRES, Defendant and Appellant.

No. 7840. Argued December 7, 1939.—Decided April 29, 1940.

*Dubón & Ochoteco* and *Angel D. Marchand Paz* for appellant. *R. A. Gómez, Prosecuting Attorney (fiscal)*, and *Luis Janer, Assistant Attorney General*, for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

This is a case of contempt of court in which the appellant was sentenced to thirty days in jail. The first paper included in the transcript of the evidence is an order which reads as follows:

"In the District Court for the Judicial District of San Juan, Puerto Rico.—Criminal Section.—The People of Puerto Rico v. Manuel Torres, Defendant.—Criminal case No. 14372.—Contempt.— Order.—Whereas, on this day Santiago Ramos was being tried in this court for murder, the jury had been duly impaneled in the room used for such purpose on the upper part of this building·

580

WHEREAS, this judge was assaulted by the accused shortly after the court had adjourned, just as he was leaving his office and precisely in the corridor close by the court; WHEREAS, such conduct on the part of the accused not only tended to interrupt the proceedings in this court and unquestionably to terrorize the jurors who had been impaneled and any other officer of the court, such conduct on the part of the accused constituting, in the judgment of the court, contempt of court inasmuch as it undermines the prestige of courts of justice; Now, THEREFORE, the court orders the accused herein to appear on February 3, 1939, that is, the day after tomorrow, at 9 a. m., to show cause why he should not be punished for contempt; and that copy of this order be delivered to counsel for accused.—San Juan, Puerto Rico, February 1, 1939. (signed:) M. Romany, Judge. Notice has been served on attorneys Dubón and Ochoteco. Feb. 1, 1939. (signed.) Eduardo López Tizol, Secretary.''

Then follow the minutes of the trial and the judgment, to wit:

''The People of Puerto Rico v. Manuel Torres.—Cause No. 14372. —Contempt of court.—In court, presided by Judge Marcelino Romany, the prosecution being conducted by district attorney Hernán R. Franco, and proceedings recorded by stenographer Carmelo Pérez, this case was called for trial and the accused requested to answer or show cause why he should not be punished for contempt. The accused appeared in person and through his attorneys, Luis Dubón and Félix Ochoteco. Upon being requested by the court as to the kind of plea he was going to enter, the accused, through his counsel, answered and denied the facts and reproduced the allegations made by him in court on February 1, whereupon the court entered the following judgment: WHEREAS, on February 1, 1939, while Santiago Ramos was being tried in this court for murder, the jury had been duly impaneled in the room used for such purpose on the upper part of the building occupied by the District Court of San Juan, Puerto Rico; WHEREAS, this judge was assaulted on February 1, 1939, by the accused shortly after the court had adjourned, just as he was leaving his office and precisely in the corridor close by the court room; WHEREAS, such conduct on the part of the accused tended to interrupt the proceedings in this court and unquestionably to terrorize the jurors who had been impaneled and any other officer of the court, such conduct on the part of the accused constituting, in the judgment of the court, contempt of court, inasmuch as it undermines

the prestige of the courts of law; WHEREAS, the court ordered accused Manuel Torres to appear before it on February 3, 1939, at 9 a. m. to show cause why he should not be punished for contempt, and ordered, moreover, that copy of the above order, entered on February 1, 1939, be served on attorneys for the accused, Dubón and Ochoteco; WHEREAS, on this day February 3, the accused appeared through his aforesaid counsel and denied the facts alleged in the order to show cause, although on February 1, 1939, on being arraigned, he stated that he admitted all the facts set out in such order; WHEREAS, besides such admission on the part of one of the attorneys for the accused of the facts alleged in the order to show cause, the court thinks that it is unnecesary to hear evidence in contempt proceedings wherein the judge is the victim of the assault, inasmuch as the judge need not pass upon any evidence because he has already personal knowledge of the facts and could never decide that an assault was never committed, as such fact was personally known to the judge and, consequently, the submission of evidence was quite unnecessary; Now, THEREFORE, as no legal ground, in the judgment of the court, has been advanced why the accused should not be punished for contempt, this court convicts him of contempt against this court and sentences Manuel Torres to thirty days' imprisonment in the District Jail of San Juan, Puerto Rico, and to the payment of a $200 fine. San Juan, Puerto Rico, February 3, 1939. (signed:) M. Romany, Judge. I attest: (signed:) Eduardo López Tizol, per M. Aldea Bigles, Deputy Clerk."

Manuel Torres appealed from the above judgment to this court on February 3, 1939, and four days later filed in the trial court the following motion:

"In the District Court for the Judicial District of San Juan, P. R. —The People of Puerto Rico v. Santiago Ramos, Defendant.— Criminal case No. In re: Murder.—(Incident in contempt proceeding against Manuel Torres.)—Motion to incorporate certain particulars in the judgment roll.—To the Honorable Court: Now comes defendant Manuel Torres, through the undersigned attorneys and to the Honorable Court respectfully states: 1.—That in the above entitled case the accused appeared on the 3rd inst., in open court, pursuant to a warrant of arrest issued against him to answer for an offense of contempt of court and pleaded, through his undersigned attorneys, everything deemed by him pertinent to his defense, whereupon this Hon. Court, on motion of the mover, continued to the

5th inst. the trial of the case against him for contempt, at which time the defendant appeared again through his attorneys and reproduced the objection which he considered pertinent under the law; 2.—That in the present contempt incident it is unnecessary to send up any transcript of evidence to· the Supreme Court in connection with the appeal prosecuted by the appelant from the judgment rendered, inasmuch as no evidence was heard for neither the People nor the defendant; 3.—That as the defendant made all his pleas in open court and orally, the proper thing to do would be to incorporate the record of all proceedings had regarding the two hearings held before this Hon. Court in conection with said contempt proceedings into the judgment roll.—By virtue of the foregoing, this defendant respectfully moves this Hon. Court to direct the secretary, when preparing the judgment roll for the purpose of said appeal, to incorporate therein the stenographic notes of all the proceedings had in the said two hearings, duly certified by the stenographer who took down the proceedings in open court in connection therewith, and to that effect the defendant likewise prays this Hon. Court to direct the said stenographer to prepare and certify the said stenographic notes, which must be approved by this Hon. Court.—San Juan, P. R., February 7, 1939. J. Ramírez Santibáñez, Dubón & Ochoteco. Per (signed:) Félix Ochoteco Jr., attorneys for defendant.''

The order sought was issued, but as time passed and no transcript was filed, the secretary of the court advised the attorneys to that effect on May 11, 1939. Apparently they did nothing and on June 16, 1939, the above officer certified and sent up to this court the record of the appeal without such transcript.

The appellant filed in this court four motions for extensions to file a brief, which he finally filed on September 25, 1939. The prosecuting attorney filed his brief on December 6, 1939, and the appeal was heard on December 7, 1939, with the appearance of counsel on both sides.

The defendant and appellant in his brief assigns as error his conviction by the trial court of contempt of court ''not committed in the immediate presence of the court without hearing any evidence,'' and his conviction ''notwithstanding the absolute absence of proof.''

He discusses at length the error assigned and sums up his discussion as follows:

"1. We do not deny and, on the contrary, admit that every assault or incorrect or provoking conduct against a magistrate, while in the court building, constitutes indirect or constructive contempt but not in the immediate presence of the court.

"2. That for an assault or reprehensible conduct towards a magistrate to constitute direct contempt the same must be committed in the immediate presence of the court, or what amounts to the same, while the court is in session.

"3. That every contempt committed as the result of an assault upon a magistrate or offensive conduct toward him, committed in the immediate presence of the court, that is, while in session, may be summarily punished without the hearing of any evidence in connection with the facts which gave rise to the prosecution and are stated in the commitment.

"4. That every assault or disrespectful conduct towards a magistrate, not committed in the presence of the court and while the latter is not in session, although constituting contempt, can not result in the conviction of the accused, without proper evidence thereon being heard, as provided by the statutes in force in our jurisdiction, in connection with the admission or nonadmission of evidence. 12 Am. Jur., p. 441, sec. 74.

"5. And lastly, as the alleged assault upon the person of the magistrate of the lower court was not committed in the immediate presence of the court and while the latter was in session, the District Court of San Juan was without jurisdiction and committed a serious error in convicting the defendant of contempt of court without the hearing of evidence, which error justifies a reversal of the judgment."

It is, therefore, admitted that the assault upon the judge, if committed, constitutes contempt of court, although the procedure followed to punish the same is challenged.

█ The law on the matter in Puerto Rico is contained in section 145 of the Penal Code, 1937 ed., p. 84, supplemented by the act of March 8, 1906, page 41, amending the act of March 1, 1902, "Defining the offense of contempt of court and providing for the punishment thereof," whose section 3 in its pertinent part reads as follows:

"When contempt is committed in the immediate presence and view of the court, the punishment therefor may be imposed immediately by the judge of the court, or the presiding judge thereof. When such a person is charged with contempt committed out of the presence of the court, no conviction can be had thereon, unless the person so charged shall have been given an opportunity to appear and defend against the charge, . . . ."

The law, therefore, recognizes two kinds of contempt. One of them is that committed in the immediate presence of a court of justice. The other is that committed by a person outside the presence of the court. In each case the procedure is established for imposing the proper punishment.

Where the contempt involved is that committed in the presence and view of the court, the latter may impose the punishment immediately. When perpetrated outside the presence of the court, the defendant must be given an opportunity to appear and defend. The first kind is direct contempt; the second is indirect or constructive contempt.

In this respect the Puerto Rican statute is similar to that of the States and Territories of the Union. Section 70 of 12 Am. Jur. 437 reads as follows:

"As a general rule, when a contempt is committed in facie curiae, the court may, in committing the offender, act of its own knowledge without further proof or examination, and the accused is not entitled to be heard in his own defense, nor can he complain that his constitutional rights are infringed by the refusal of a hearing. The court, however, may, in its discretion, allow a contemner to be heard before he is sentenced. With respect to constructive contempts or those which are committed without the actual presence of the court, it is essential that a hearing be allowed and the contemner permitted, if he so desires, to interpose a defense to the charges before punishment is imposed."

■■■ If the contempt on account of which appellant was punished were direct, there would not be room for the slightest contention. If it were constructive, or of doubtful nature, then a careful consideration is required.

Was it direct, that is, was it committed in the immediate presence of the court?

For a correct answer to the question, we must first establish what is meant by presence of the court.

In American Jurisprudence, *supra,* when summing up the jurisprudence on the matter, the following appears:

"In defining what is meant by 'the presence of the court,' as the term is used with reference to contempts, it is said that 'the court' consists not of the judge, the courtroom, the jury, or the jury room individually, but of all of these combined. The court is present wherever any of its constituent parts is engaged in the prosecution of the business of the court according to law. In some states it is held that any act which is calculated to impede, embarrass, or obstruct the court in the administration of justice is to be considered as committed in the presence of the court. In others it is held that only such contempts as are committed within ocular view, or range of vision, are to be considered as committed in the 'presence of the court.' In a few instances the courts have passed upon the facts of the particular case under review and decided whether the contempt complained of was committed in the presence of the court without laying down any fixed rule in that respect." 12 Am. Jur., sec. 5, p. 392.

In the instant case the contempt was not committed while the court was in session. The court was presiding a trial for murder. The court adjourned. The jury was impaneled in the room used for the purpose on the upper floor of the court building. Shortly after the adjournment, while the judge was leaving his office and was walking along the corridor close by the courtroom, he was assaulted by the defendant.

In the commitment no mention is made of the reason for the assault nor whether or not the same was connected with any business of the court in general or with the particular case under consideration. The commitment does state, however, that the conduct of the defendant not only tended to interrupt the proceedings of the court but also to terrorize

the jury and any other officer of the court, the court being of the opinion that it constituted contempt of court because it undermined the prestige of the courts of justice.

Therefore, we are not dealing with a typical case of direct contempt committed while the court is in session, where the act constituting it is committed not only in the presence of its judge but also in that of the other officers thereof including counsel, of the parties and of the public. There is no doubt, however, that the act having been committed in the presence of its judge under the circumstances and with the result stated in the commitment, it could be defined as direct within the jurisprudence cited.

However, as it does not appear that the act committed was in connection with the business of the court, which is a necessary requisite for the case fully to fall within the scope of the facts in *Ex parte McCown,* (139 N.C. 95, 2 L.R.A. (N.S.) 603, 51 N.E. 957), 18 A.L.R. 214, we doubt whether the above definition could be applied so as to be recognized in all its effects. In view of the facts of the case, it seems to us that the better practice is to follow for the purpose of the punishment to be imposed the procedure established by the legislator for constructive contempts as far as possible and necessary. *Ex parte Redmon,* 159 Miss. 449, 132 So. 330.

The district court itself seems to have found it so, inasmuch as it did not punish the appellant instantly, not even upon his admission of the facts charged against him, but on the same day of the incident—February 1, 1939—it issued a commitment complying with all the legal requisites, describing the facts in the way already known and setting the 3rd of February 1939, at 9 a.m., for the defendant to appear and ''show cause why he should not be punished for contempt.''

The defendant indeed appeared, and what happened? The only source of information at our disposal is the second of the papers above transcribed, to wit: ''the minutes of the

trial and the judgment," as the appellant failed to complete the record with the stenographic notes which he himself requested for that purpose.

The defendant, who two days previously had admitted the facts stated in the commitment, denied them and reproduced "the allegations made by him in court on February 1," of which allegations we know nothing.

Thereupon the court proceeded to render a judgment of conviction based on its personal knowledge of the facts, because it was the judge thereof who had been assaulted, and, upon the conclusion that the same constituted contempt, imposed on the accused the punishment which it deemed proper.

The defendant does not appear to have objected to the procedure followed nor even to have expressed his purpose to cross-examine the judge, or submit evidence, or explain his conduct.

He claims on appeal that he was committed without evidence. We have perused his brief and find indeed therein the repeated assertion that as it was a case of constructive contempt the hearing of evidence was necessary; but nowhere in his brief is there a discussion of the probatory value of the personal knowledge of the facts necessarily possessed by the judge of the trial court.

Of course, this personal knowledge, which is not the judicial notice mentioned in the law of evidence, would not be proof in ordinary civil or criminal cases; but in a contempt case where such personal knowledge is considered by the legislator himself not only sufficient but the only one permissible where the fact occurs in the presence of the court, may it not be considered legal and sufficient, though the fact should not occur in the presence of the court while in session but in that of the judge only?

In support of his contention that the defendant could not be committed "without proper evidence thereon being heard, as provided by the statutes in force in our jurisdiction, in

connection with the admission or nonadmission of evidence'', appellant cites 12 Am. Jur., sec. 74, p. 441. Indeed, the text writer says that the rules which relate to evidence in general will, so far as practicable, shall govern in contempt proceedings; but when singling out and citing cases in support of the text it is observed that the evidence is always introduced upon facts of which the judge of the court *a quo* can only take cognizance from outside testimony. None of such cases meets the facts of the case at bar.

Such being the case, we do not think that it can be held that there was no proof. The court acted in this respect as it would have acted if a direct contempt had been involved and could do so because the facts took place in its immediate presence. No other evidence for the prosecution was required, and it was upon the accused that it then devolved to overcome the same, if possible, by cross-examination—by formally requesting the judge to testify as a witness—or by the introduction of any other pertinent evidence, and if unable to overcome it, to mitigate at least its effect against him by means of any proof or explanation tending to explain his conduct.

Nothing was done in this respect and therefore he can not complain now. Even in a contempt which at least has many of the characteristics of the direct contempt, the court accorded him ample opportunities to defend and he failed to avail himself thereof, preferring to be convicted in order to appeal to this court upon an incomplete record that will not even allow us to fully acquaint ourselves with what took place in the sittings of the 1st and of the 3rd of February, 1939.

During the discussion of the case by the justices in conference attention was strongly called to the decision of the Supreme Court of United States in *Cooke* v. *United States*, 267 U.S. 517. Let us examine it.

Clay Cooke and J. L. Walker were sentenced each to thirty days in jail for contempt committed against the District Court

of the United States for the North District of Texas. An appeal was taken on writ of error to the Circuit Court of Appeals for the Fifth Circuit which affirmed the judgment as to Cooke and reversed it as to Walker. An appeal was taken on certiorari to the Supreme Court of the United States which reversed the Circuit Court and remanded the case to the district court for further proceedings consistent with the opinion.

Walker was the defendant in a series of suits which arose as the result of the bankruptcy of Walker Grain Company. In one of them, after a protracted trial, the jury brought in a verdict for $56,000 against Walker. On the following day, while the court was in session trying another case and during a ten-minute recess, Walker, upon the suggestion of Cooke, handed to the district judge in his office, next to the court-room, a letter marked ''Personal'' in which Cooke, as attorney for the Walker Grain Company, asked him to let him suggest, as an attorney interested in the cause of justice and equality for all and as his friend, that the only order that he would consent to be entered in the pending proceedings would be one disqualifying him to proceed in the case by reason of prejudice.

Eleven days afterwards the court made an order setting forth the facts and concluding that the matter was within the personal knowledge of the court and that the letter constituted an attack against the honor and integrity of the court and therefore contempt of court, and ordered the marshal to bring forthwith Walker and Cooke, litigant and counsel respectively, to the presence of the court, to show cause, if any, why they should not be punished for contempt.

The marshal arrested and took them into court. The latter called the case for trial and stated that he had required Judge McCormick, of Dallas, to be present and act as amicus curiae during the proceedings, and further required the district attorney to act in the premises, as the matter involved was one of a criminal nature.

Cooke said that he had not known of the proceeding until that morning, that he would like time to prepare for trial and get witnesses for their defense, that there might be extenuating circumstances which would appeal to the court's sense of fairness and justice in fixing whatever penalty might be imposed and that he had attempted to secure counsel but through illness or absence of those he sought he had failed up to that time.

Judge Wilson intimated that he would not postpone the matter and said:

"There is just this question involved, and as stated by counsel representing the Court, these facts are within the personal knowledge of this Court. Did you deliver this letter to the Judge of this Court?

"Mr. Clay Cooke: Is your Honor asking me?

". . . . . . . . ."

A long colloquy followed which covers from page 522 to p. 527 of Vol. 267 of the United States Reports, and which subsequently, together with the foregoing extracts, led the court to say and to hold, through Mr. Chief Justice Taft, partly, as follows:

". . . . Considering the circumstances and the fact that the case was still before the judge, but without intending to foreclose the right of the petitioner to be heard with witnesses and argument on the issue when given an opportunity, we agree with the Circuit Court of Appeals that the letter was contemptuous.

"But while we reach this conclusion, we are far from approving the course of the judge in the procedure, or absence of it, adopted by him in sentencing the petitioner. He treated the case as if the objectionable words had been uttered against him in open court.

"To preserve order in the court room for the proper conduct of business, the court must act instantly to suppress disturbance or violence or physical obstruction or disrespect to the court when occurring in open court. There is no need of evidence or assistance of counsel before punishment, because the court has seen the offense. Such summary vindication of the court's dignity and authority is necessary. It has always been so in the courts of the common law

and the punishment imposed is due process of law. Such a case had great consideration in the decision of this Court in *Ex parte Terry*, 128 U. S. 289. It was there held that a court of the United States upon commission of a contempt in open court might upon its own knowledge of the facts without further proof, without issue or trial, and without hearing an explanation of the motives of the offender, immediately proceed to determine whether the facts justified punishment and to inflict such punishment as was fitting under the law.

"The important distinction between the *Terry case* and the one at bar is that this contempt was not in open court. This is fully brought out in *Savin, Petitioner*, 131 U. S. 267. The contempt there was an effort to deter a witness, in attendance upon a court of the United States in obedience to a subpoena, while he was in a waiting room for witnesses near the court room, from testifying, and the offering him money in the hallway of the courthouse as an inducement. This was held to be 'misbehavior in the presence of the court' under section 725 R. S. (now section 268 of the Judicial Code) The Court, speaking by Mr. Justice Harlan, said (page 277):

" 'We are of opinion that, within the meaning of the statute, the court, at least when in session, is present in every part of the place set apart for its own use, and for the use of its officers, jurors and witnesses; and misbehavior anywhere in such place is misbehavior in the present of the court. It is true that the mode of proceeding for contempt is not the same in every case of such misbehavior. Where the contempt is committed directly under the eye or within the view of the court, it may proceed "upon its own knowledge of the facts and punish the offender, without further proof, and without issue or trial in any form," *Ex parte Terry*, 128 U. S. 289, 309; whereas, in cases of misbehavior in which the judge can not have such personal knowledge, and is informed thereof only by confession of the party, or by testimony under oath of others, the proper practice is, by rule or other process, to require the offender to appear and show cause why he should not be punished. 4 Bl. Com. 286.'

"This difference between the scope of the words of the statute 'in the presence of the court,' on the one hand, and the meaning of the narrower phrase 'under the eye or within the view of the court,' or 'in open court' or 'in the face of the court,' or 'in *facie curiae*,' on the other, is thus clearly indicated and is further elaborated in the opinion.

"We think the distinction finds its reason not any more in the ability of the judge to see and hear what happens in the open court

than in the danger that, unless such an open threat to the orderly procedure of the court and such a flagrant defiance of the person and presence of the judge before the public in the 'very hallowed place of justice,' as Blackstone has it, is not instantly suppressed and punished, demoralization of the court's authority will follow. Punishment without issue or trial was so contrary to the usual and ordinarily indispensable hearing before judgment, constituting due process, that the assumption that the court saw everything that went on in open court was required to justify the exception; but the need for immediate penal vindication of the dignity of the court created it.

"When the contempt is not in open court, however, there is no such right or reason in dispensing with the necessity of charges and the opportunity of the accused to present his defense by witnesses and argument. The exact form of procedure in the prosecution of such contempts is not important. The Court in *Randall* v. *Brigham,* 7 Wall. 523, 540, in speaking of what. was necessary in proceedings against an attorney at law for malpractice said:

" 'All that is requisite to their validity is that, when not taken for matters occurring in open court, in the presence of the judges, notice should be given to the attorney of the charges made and opportunity afforded him for explanation and defence. The manner in which the proceeding shall be conducted, so that it be without oppression or unfairness, is a matter of judicial regulation.'

"The Court in *Savin, petitioner*, 131 U. S. 267, applied this rule to proceedings for contempt.

"Due process of law, therefore, in the prosecution of contempt, except of that committed in open court, requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation. We think this includes the assistance of counsel, if requested, and the right to call witnesses to give testimony, relevant either to the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty to be imposed. See *Hollingsworth* v. *Duane,* 12 Fed. Cases, 359, 360; *In re Stewart* 118 La. 827; *Ex parte Clark,* 208 Mo. 121.

"The proceeding in this case was not conducted in accordance with the foregoing principles. We have set out at great length in the statement which precedes this opinion the substance of what took place before, at and after the sentence. The first step by the court was an order of attachment and the arrest of the petitioner. It is not shown that the writ of attachment contained a copy of the order

of the court, and we are not advised that the petitioner had an exact idea of the purport of the charges until the order was read. In such a case, and after so long a delay, it would seem to have been proper practice, as laid down by Blackstone, 4 Commentaries, 286, to issue a rule to show cause. The rule should have contained enough to inform the defendant of the nature of the contempt charged. See *Hollingsworth* v. *Duane*, 12 Fed. Cases 367, 369. Without any ground shown for supposing that a rule would not have brought in the alleged contemnors, it was harsh under the circumstances to order the arrest.

"After the court elicited from the petitioner the admission that he had written the letter, the court refused him time to secure and consult counsel, prepare his defense and call witnesses, and this although the court itself had taken time to call in counsel as a friend of the court. The presence of the United States District Attorney also was secured by the court on the ground that it was a criminal case.

"The court proceeded on the theory that the admission that the petitioner had written the letter forclosed evidence or argument. In cases like this, where the intention with which acts of contempt have been committed must necessarily and properly have an important bearing on the degree of guilt and the penalty which should be imposed, the court can not exclude evidence in mitigation. It is a proper part of the defense. There was a suggestion in one of the remarks of the petitioner to the court that, while he had dictated the letter he had not read it carefully, and that he had trusted to the advice of his partner in sending it; but he was not given a chance to call witnessses or to make a full statement on this point. He was interrupted by the court or the counsel of the court in every attempted explanation. On the other hand, when the court came to pronounce sentence, it commented on the conduct of both the petitioner and his client in making scandalous charges in the pleadings against officials of the court and charges of a corrupt conspiracy against the trustee and referee in bankcruptcy, and in employing a detective to shadow jurymen while in charge of the marshal, and afterwards to detect bribery of them, in proof of which the court referred to a sworn statement of the detective in its hands, which had not been submitted to the petitioner or his client. When Walker questioned this, the court directed the marshal to prevent further interruption. It was quite clear that the court considered the facts thus announced as in aggravation of the contempt. Yet no oppor-

tunity had been given to the contemnors even to hear these new charges of the court, much less to meet or explain them, before the sentence. We think the procedure pursued was unfair and oppressive to the petitioner.''

We have quoted at length from the opinion of the Supreme Court because, speaking for itself, it reveals how different indeed is the Cooke case from the one at bar, notwithstanding the similarity that at first seems to exist from a mere reading of some passages of the opinion.

In the first place, the facts constituting contempt took place in a way essentially distinct. In the *Cooke* case the contempt was committed by means of a letter delivered to the judge in his office, that may or may not have been read forthwith without interfering with the proceedings in court. In the instant case the contempt was committed by Torres assaulting the person of the judge who was engaged in presiding a criminal trial for murder, shortly after the court had adjourned, while he was leaving his office and was in the corridor next to the court room, which assault tended to interrupt the proceedings in court and to terrorize the jurors who were impaneled, as expressly communicated to the defendant in the order of February 1, 1939, summoning him to appear at three o'clock.

In the *Cooke* case the defendants were ordered to appear forthwith. In the instant case, as we have just seen, Torres was given three days which were afterwards extended to five.

In the *Cooke* case the defendants were refused the assistance of counsel, notwithstanding their request to that effect. In the present case Torres appeared assisted by his attorneys.

In the *Cooke* case the latter sought to explain, to defend, to show that there were mitigating circumstances, and everything was refused him. In the case before us, Torres did nothing, raised nothing, and brought an incomplete record to court.

It was the atmosphere of arbitrariness in which the Cooke case unfolded itself that undoubtedly led the Supreme Court

to reverse the decision of the Circuit Court and to remand the case to the district court for further proceedings. Moved by the urge to do justice, some of its expressions perhaps went too far. The same court, four years afterwards, in *Sinclair* v. *United States,* 279 U.S. 749, 767, said:

"Always the language used in an opinion must be read in the light of the issues presented. Cooke was not accorded due opportunity at any stage of the proceedings to state the facts which might excuse or mitigate his conduct and the words quoted were addressed to that situation. Here there was abundant opportunity for presentation of anything really important."

 The last question raised in the appellant's brief is as follows:

"That it was error to have the defendant tried by the lower court which was presided precisely by the same magistrate upon whose person the assault had been committed."

Contempt, as has been repeatedly held, not only for years but for centuries, is a proceeding *sui generis* which requires immediate action on the part of the court and in which the power to take action has been recognized in the very judge against whom the contempt has been committed. The reason is that the contemned party is not the person of the judge but the dignity of the court and what is interrupted is the orderly administration of justice.

Now, if that were possible, and in order that neither individually nor socially there could be entertained the slightest suspicion of an arbitrary procedure, the proper thing would be for the contemned judge in contempt cases like the one before us, where a personal assault is concerned, to abstain from intervening and to transfer the cognizance of the matter to some other judge similarly qualified and whose duty it is to intervene. Failure to do so, however, is not such an error as to carry with it a reversal of the judgment.

It is well to transcribe in this respect what the Supreme Court said in the same Cooke case. It is as follows:

". . . . The power of contempt which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court is most important and indipsensable. But its exercise is a delicate one and care is needed to avoid arbitrary or oppressive conclusions. This rule of caution is more mandatory where the contempt charged has in it the element of personal criticism or attack upon the judge. The judge must banish the slightest impulse to reprisal, but he should not bend backward and injure the authority of the court by too great leniency. The substitution of another judge would avoid either tendency but it is not always possible. . . . All we can say upon the whole matter is that where conditions do not make it impracticable, or where the delay may not injure public or private right, a judge called upon to act in a case of contempt by personal attack upon him, may, without flinching from his duty, properly ask that one of his fellow judges take his place. (Citations.)

"The case before us is one in which the issue between the judge and the parties had come to involve marked personal feeling that did not make for an impartial and calm judicial consideration and conclusion, as the statement of the proceedings abundantly shows. We think, therefore, that when this case again reaches the District Court to which it must be remanded, the judge who imposed the sentence herein should invite the senior circuit judge of the circuit to assign another judge to sit in the second hearing of the charge against the petitioner."

By virtue of the foregoing, the appeal must be dismissed and the judgment appealed from affirmed.

Mr. Justice Wolf concurs in the decision and most of the opinion and its spirit, but he wishes to state that in his judgment the contempt committed was direct.

MR. JUSTICE TRAVIESO, dissenting.

On February 1, 1939, Hon. Marcelino Romany, Judge of the District Court of San Juan, issued an order requiring Manuel Torres to appear before him and show cause why he should not be punished for contempt. In the preamble to said order, as the facts constituting the above contempt,

he sets out as follows: That on the day in question during a prosecution for murder in said district court, in which a jury had been impaneled, Judge Romany "was assaulted by the accused shortly after the court adjourned just as the judge was leaving his office and precisely in the corridor closè by the court room;" that the conduct of the accused tended to interrupt the proceedings and to terrorize the jurors who were impaneled; and that such fact constitutes contempt because the same undermines the prestige of the courts of justice.

On the day set in the order the accused appeared assisted by counsel, and to the question from the court whether he had anything to allege he answered that he denied the charges against him, whereupon the court entered judgment sentencing the accused to thirty days in jail and to pay a $200 fine. The accused took the present appeal from the above sentence and assigns as error the conviction of the accused by the court of constructive contempt without the hearing of any evidence.

There is no controversy as to the facts, as stated in the order to show cause, constituting contempt, if proven; and that such contempt should be punished severely, as a protection of the prestige of the courts to which citizens owe obedience and respect.

The point argued by the defense and the prosecution and which has given rise to an interesting discussion by the members of this court, is as follows:

Was it error for the trial court to convict the defendant, notwithstanding his denial of the charges against him, without hearing evidence tending to substantiate said charges?

Any act or conduct tending to prevent or obstruct and which does prevent or obstruct a court from administering justice, or which undermines its authority or dignity constitutes contempt. Contempt may be either direct, or indirect or constructive. In the volume dealing with Contempt of the "National Lawyers' Manual," by Dangel, contempt is defined as followed:

598

"7. *Direct Contempt.*—A *direct contempt* consists of something done, or omitted to be done, in the presence of the court tending to impede or interrupt its proceedings or reflect upon its integrity. It occurs only where the acts constituting the contempt have been committed in the presence of the court. It is an insult committed in the presence of the court, or of a judge when acting as such, or a resistance of or interference with the lawful authority of the court or judge in his presence, or improper conduct so near to the court or judge acting judicially as to interrupt or hinder judicial proceedings.

"8. *Indirect Contempt—Indirect contempt* is synonymous with constructive contempt. It consists of an act having a tendency to obstruct and embarrass or prevent the due administration of justice, *done at a distance and not during the session of the court* nor in its immediate view and presence.

"An indirect or constructive contempt is an act done, *not in the presence of the court or of a judge acting judicially,* but at a distance, under circumstances that reasonably tend to degrade the court or the judge as a pudicial officer, or to obstruct, interrupt, prevent, or embarrass the administration of justice by the court or judge." (Italics ours.)

See: 23 A.L.R. 183; 27 A.L.R. 1219; 31 A.L.R. 1226; 49 A.L.R. 647; *Globe Newspaper Co.* v. *Com.,* 188 Mass. 449; *Hurley* v. *Com.,* 188 Mass. 443; *Blackemburg* v. *Com.,* 272 Mass. 25; Bailey on Habeas Corpus, sec. 62, p. 212; *Weldon* v. *State,* 234 S.W. 466; and *Turquette* v. *State,* 298 S.W. 15.

Under the facts as set out in the order to show cause, the act charged against defendant Manuel Torres constitutes indirect or constructive criminal contempt. It is criminal, because the assault upon the person of the judge, committed under the circumstances set out in said order, affects the authority, prestige and dignity of the court and tends to obstruct the free and proper administration of justice. It is indirect or constructive, because the alleged "assault" or attack did not occur while the court was in session, nor in the immediate presence of the court, nor so close by the court while in session that it tended to interrupt the proceedings, nor at a time when the assaulted judge was performing judicial functions. The fact was committed "after the court

had adjourned, just as the judge was leaving his office, and precisely in the corridor close by the court room.''

All of the authorities agree that where direct contempt is involved, committed in the immediate presence of the court or so near the place where the court is sitting that it tends to interrupt its proceedings, the court has the inherent power to impose the punishment summarily, without the necessity of hearing evidence. This power is moreover expressly conferred on courts by section 3 of the Act of March 8, 1906, (which amended that of March 1, 1902), which provides that ''when contempt is committed in the immediate presence and view of the court, the punishment therefor may be imposed immediately by the judge of the court, or the presiding judge thereof.'' On p. 206 of the National Lawyers' Manual, *supra*, it is said:

"The trend of the court in modern times is that even in direct contempt there should be proceedings, wherein the accused should be formally charged, orally or in writing, with the facts alleged to constitute the contempt, and complete specifications be given in detail. There should be required a hearing by the court, and proof should be necessary to establish the guilt of the accused." (In this connection the case of *Blackenburg* v. *Com.*, 272 Mass. 25, is cited.)

In the instant case the trial judge gave as his opinion, and so stated in his judgment, ''that it is unnecessary to hear evidence in contempt proceedings wherein the judge is the person assaulted, inasmuch as the judge need not pass upon any evidence because he has already personal knowledge of the facts and could never decide that an assault was never committed, as such fact was personally known to the judge and, consequently, the submission of evidence was quite unnecessary.''

Where, as in the case at bar, an indirect or constructive contempt is involved, the accused is entitled to a hearing on the charge brought against him, in which he should be given an opportunity to examine the witnesses for the prosecution

and to produce his own witnesses. Any personal knowledge that might be had by the trial judge is no substitute for the evidence in support of every conviction and judgment.

"The judgment of contempt should not be entered without any evidence being received by the court upon the basis of facts within the mind of the judge only, *but not a matter of record in the case.* Unless this is the rule, the finality of judgment or conviction can never be impeached because of some fact within the knowledge, or assumed knowledge, of the judge, *not a matter of record,* and, upon review by the reviewing court, not carried into the return on the writ of error. The individual knowledge of a fact on the part of the trial judge, not a matter of common knowledge, should not dispense with proof of such fact, or at least the placing of the fact of such knowledge by the judge upon the record and resort should not be had to it for the purpose of suplementing the record. The reason for this is important, for, if the judge enters a judgment or conviction of record upon facts known or believed to be known to him, without being called upon to notice judicially such facts at the time and incorporate the same in the record, no opportunity is afforded the accused claiming the invalidity of the judgment to controvert the facts in the mind of the judge and no opportunity is presented for the reviewing court to have knowledge of such facts known to the judge, or which he believes he knows, but not commonly known.

"When the contempt is not in open court, there is no right or reason to dispense with the necessity of charges and the opportunity to the accused to present his defense by witnesses and argument." National Lawyers' Manual, *supra,* pp. 206, 207.

The necessity to hear evidence in a prosecution for criminal indirect contempt is evident. The accused is protected by the statutory presumption of innocence until his guilt is established beyond any reasonable doubt. The burden of proof in criminal contempt proceedings falls upon the complainant, and it devolves upon the latter to prove the allegations of contempt beyond every reasonable doubt. The accused can not be compelled to testify against him. See: N.L.M. "Contempt," pp. 76 and 242; *Michaelson* v. *U. S.,* 266 U.S. 42; *Gompers* v. *Bucks Stove & Range Co.,* 221 U.S.

418, 441; *People* v. *Spain*, 307 Ill. 283; *Com.* v. *Madeiros*, 255 Mass. 304; *Clark* v. *U. S.*, 289 U.S. 1; 35 A.L.R. 451; *Root* v. *McDonald*, 260 Mass. 344.

The facts in *Cooke* v. *United States*, 267 U.S. 517, 69 L.Ed. 767, are similar to those of the case at bar and the decision therein lays down the doctrine applicable to cases like the one under consideration. Attorney Cooke and his client Walker were sentenced by the Federal District Court to thirty days in jail for contempt. Walker had been sued several times and in one of the suits the jury adjudged him to pay $56,000. The day after the verdict, *while the court was open trying another case,* and during a 10-minute recess, Walker, on instructions from his attorney, delivered to the judge in the latter's office, a few feet from the court room, a letter marked "Personal," where referring to the suits pending in which Walker was a defendant, the attorney advised and prayed the judge to withdraw from the cases to avoid the necessity for the attorney to challenge him formally. In the letter the judge was charged with passion, prejudice and bias against Walker. The judgment was affirmed on appeal by the Circuit Court. The case was taken on certiorari to the Federal Supreme Court which reversed the judgment and remanded the case to the lower court for further proceedings not inconsistent with the opinion rendered through Mr. Chief Justice Taft. The Supreme Court, after agreeing with the lower court that the letter in question was contemptuous, said:

"But while we reach this conclusion, we are far from approving the course of the judge in the procedure, or absence of it, adopted by him in sentencing the petitioner. He treated the case as if the objectionable words had been uttered against him in open court.

"To preserve order in the court room for the proper conduct of business, the court must act instantly to suppress disturbance or violence or physical obstruction or disrespect to the court when occurring in open court. There is no need of evidence or assistance of counsel before punishment, because the court has seen the offense.

Such summary vindication of the court's dignity and authority is necessary. It has always been so in the courts of the common law and the punishment imposed is due process of law. Such a case had great consideration in the decision of this Court in *Ex parte Terry,* 128 U. S. 289. It was there held that a court of the United States upon the commission of a contempt in open court might upon its own knowledge of the facts without further proof, without issue or trial, and without hearing an explanation of the motives of the offender, immediately proceed to determine whether the facts justified punishment and to inflict such punishment as was fitting under the law.

"The important distinction between the *Terry Case* and the one at bar is that this contempt was not in open court. This is fully brought out in *Saving, Petitioner,* 131 U. S. 267. The contempt there was an effort to deter a witness, in attendance upon a court of the United States in obedience to a subpoena, while he was in a waiting room for witnesses near the court room, from testifying, and the offering him money in the hallway of the court-house as an inducement. This was held to be 'misbehavior in the presence of the court' under section 725 R. S. (now section 268 of the Judicial Code). The Court, speaking by Mr. Justice Harlan, said (page 277);

" 'We are of opinion that, within the meaning of the statute, the court, *at least when in session,* is present in every part of the place set apart for its own use, and for use of its officers, jurors and witnesses; and misbehavior anywhere in such place is misbehavior in the presence of the court. It is true that the mode of proceeding for contempt is not the same in every case of such misbehavior. Where the contempt is committed directly under the eye or within the view of the court, it may proceed "upon its own knowledge of the facts and punish the offender, without further proof, and without issue or trial in any form,' . . . .

" '. . . . . . . .

"We think the distinction finds its reason not any more in the ability of the judge to see and hear what happens in the open court than in the danger that, unless such an open threat to the orderly procedure of the court and such a flagrant defiance of the person and presence of the judge before the public in the 'very hallowed place of justice,' as Blackstone has it, is not instantly suppressed and punished, demoralization of the court's authority will follow. Punishment without issue or trial was so contrary to the usual and ordinarily indispensable hearing before judgment,

constituting due process, that the assumption that the court saw every thing that went on in open court was required to justify the exception; but the need for immediate penal vindication of the dignity of the court created it.

"When the contempt is not in open court, however, there is no such right or reason in dispensing with the necessity of charges and the opportunity of the accused to present his defense by witnesses and argument. . . ."

In the case at bar, the accused was sufficiently advised as to the charges against him. The denial of such charges by the accused raised an issue similar to that raised by a plea of "not guilty." Hence, as the contempt herein involved was not committed in open court, the necessity arose to hold a trial and to hear evidence in support of the charge. By failing to proceed thus, the accused was deprived of the due process of law and the sentence imposed on him is void.

In the case at bar as in that of *Cooke* v. *United States, supra,* it has been assigned as error that it was the assaulted judge who took cognizance of the case and punished the accused. The Federal Supreme Court, in the above case, when considering the issue, expressed itself as follows:

". . . . . . . . . .

The power of contempt which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court is most important and indipensable. But its exercise is a delicate one and care is needed to avoid arbitrary or oppressive conclusions. This rule of caution is more mandatory where the contempt charged has in it the element of personal criticism or attack upon the judge. The judge must banish the slightest personal impulse to reprisal, but he should not bend backward and injure the authority of the court by too great leniency. The substitution of another judge would avoid either tendency but it is not aways possible.

. . . . . . . . . .

. . . . .All we can say upon the whole matter is that where conditions do not make it impracticable, or where the delay may not injure public or private right, a judge called upon to act in a case of

contempt by personal attack upon him, may, without flinching from his duty, properly ask that one of his fellow judges take his place. (Citations.)

"The case before us is one in which the issue between the judge and the parties had come to involve marked personal feeling that did not make for an impartial and calm judicial consideration and conclusion, as the statement of the proceedings abundantly shows. We think, therefore, that when this case again reaches the District Court to which it must be remanded, the judge who imposed the sentence herein should invite the senior circuit judge of the circuit to assign another judge to sit in the second hearing of the charge against the petitioner."

The main objection of the writer of this opinion against the proposed affirmance of the judgment is that the accused and appellant was convicted without the production of any evidence against him, that is, without due process of law. The necessity for this evidence is evident. Neither in the order to show cause, which can not be considered as evidence, nor in the judgment, is there established any relationship or connection between the assault upon the judge and the case under prosecution in the district court. A statement from the judge would certainly have established such connection, which is absolutely necessary for the act, which was not committed in open court, to constitute contempt of court. No record or transcript of evidence is before this court to enable it to determine whether the conviction of the defendant rested on sufficient evidence. The affirmance of the judgment, therefore, must necessarily rest on the presumption that what the trial judge had in mind was sufficient legal evidence to warrant the conviction of the accused. There is no law authorizing such presumption. If there were any such law, its effect would be the destruction of the presumption of evidence in favor of every accused.

The precedent that would be established by the proposed judgment, that is, that a citizen may be deprived of his liberty without any evidence against him being produced, on the mere fact that the judge bringing the charge, who is the one to

try him, is acquainted with the facts, is in our opinion a dangerous one. The dignity and prestige of courts would neither be impaired nor injured by setting up the legal doctrine that where an alleged contempt has not been committed in the immediate presence of a court in session and consists in an offensive act against the person of the judge, the latter shall appoint another judge to take cognizance of the case and shall take the stand to sustain the charge brought by him so as to give the accused an opportunity to cross-examine him.

For the foregoing reasons I dissent from the majority opinion, and it is my opinion that the judgment ought to have been reversed and the case remanded to the lower court with instructions to have the case tried *de novo* before either of the other three judges of the District Court of San Juan.

I am authorized by Mr. Justice De Jesús to state that he concurs in this opinion.